IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**WATSON GRINDING &<br>MANUFACTURING CO.,**<br><br>Debtor.<br><br>**INDIAN HARBOR INSURANCE<br>COMPANY**<br><br>Plaintiff,<br><br>**VERSUS**<br><br>**WATSON GRINDING &<br>MANUFACTURING CO.**<br><br>Defendant. | **CASE NO. 20-30967**<br><br>**CHAPTER 11**<br><br><br><br>Adv. Proc. No. _____ |

**INDIAN HARBOR INSURANCE COMPANY'S COMPLAINT
AND PETITION FOR DECLARATORY JUDGMENT**

COMES NOW, INDIAN HARBOR INSURANCE COMPANY ("IHIC"), and files this Original Complaint and Request for Declaratory Judgment against the Debtor, Watson Grinding & Manufacturing Co. ("Debtor"). IHIC seeks a declaratory judgment against Debtor that IHIC is not obligated to defend and indemnify Debtor against claims asserted in underlying lawsuits, under insurance policies IHIC issued to Watson Valve Services, Inc. ("Valve"), as set forth below. In the alternative, and only to the extent necessary, IHIC seeks reformation of these insurance policies to reflect the parties' antecedent agreement that the IHIC insurance policies issued to Valve would only provide limited Professional Liability coverage (not Commercial General Liability coverage) to Debtor, and as such do not obligate IHIC to defend and indemnify Debtor against claims asserted in underlying lawsuits.

## PARTIES

1. At all pertinent times, IHIC was and still is a corporation organized and existing under the laws of Delaware with its principal place of business located in Stamford, Connecticut.

2. At all pertinent times, Debtor was and still is a corporation organized and existing under the laws of Texas with its principal place of business located in Houston, Texas.

## JURISIDICTION AND VENUE

3. This adversary proceeding action is brought by IHIC against Debtor pursuant to 28 U.S.C. §§ 1334, 157, and Federal Rule of Bankruptcy Procedure 7001(9), seeking a determination of coverage (if any) under the Comprehensive General Liability section of primary and excess liability insurance policies issued by IHIC to Valve.

4. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 11 U.S.C. § 157 and 28 U.S.C. § 1334.

5. This adversary proceeding is a core proceeding pursuant to sections 157(b)(2)(A) and (O) of Title 28, United States Code, and the Court may enter a final judgment as to the merits of this case.

6. As set forth in detail below, Debtor currently has claims pending against it that arise from a January 24, 2020 explosion at Debtor's facility located in Houston, Texas. IHIC issued liability insurance policies to Valve, under which Debtor contends it is a beneficiary of the Commercial General Liability coverage provided by those policies.

7. As such, this action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(A)(B)(C) and (O). The claims and causes of action

asserted herein have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

8. IHIC consents to entry of a final judgment by this Court. *See* Fed. R. Bankr. R. 7008 and Local Bankr. R. 7008-1.

9. Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001(9) and 28 U.S.C. § 2201.

10. This Court has personal jurisdiction over the Debtor named herein because the Debtor has sufficient minimum contacts with Texas so as to render the exercise of jurisdiction by the Texas courts permissible under traditional notions of fair play and substantial justice. Moreover, this Court has personal jurisdiction over the Debtor under Rule 7004 of the Federal Rules of Bankruptcy Procedure.

11. Venue of Debtor's bankruptcy case and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

*The Explosion and Underlying Suits*

12. Debtor operated facilities at and near 4500 Gessner, Houston, TX 77041.

13. On January 24, 2020, the building at 4500 Gessner, Houston, TX (the "Building") exploded, scattering debris as far as a half-mile away and damaging approximately 200 homes and businesses (the "Explosion"). Two people died and several more were injured as a result of the Explosion.

14. To date, the Explosion has given rise to approximately 130 lawsuits by numerous individuals, businesses and subrogated property insurers against Debtor and Valve (the "Underlying Lawsuits").

15. Debtor and Valve have each sought protection against their respective alleged

liabilities in connection with these matters by filing separate petitions in Bankruptcy Court.

### *Debtor's Notice to IHIC*

16. IHIC issued a policy of primary liability insurance to Valve, Policy No. US00087635LI19A (the "Valve Primary Policy"), that was in effect at the time of the Explosion.

17. IHIC also issued an excess liability insurance policy to Valve, Policy No. US00087637LI19A (the "Valve Excess Policy"), that was in effect at the same time (the Valve Primary Policy and the Valve Excess Policy are collectively referred to as the "Valve Policies").

18. In relevant part, the Valve Policies contain two (2) independent grants of coverage: (1) Commercial General Liability ("CGL") and (2) Professional Liability ("PL").

19. On May 8, 2020, the Debtor made a demand for defense and indemnity to IHIC under the CGL section of the Valve Policies.

20. On June 23, 2020, IHIC sent a letter to Debtor's counsel rejecting that demand based on the extensive underwriting history which shows that Debtor only sought, and IHIC only agreed to provide Debtor with, insured status under the Valve Policies with respect to a limited grant of PL Coverage (which is not implicated by claims arising from the Explosion). No coverage is provided to Debtor under the CGL section of the Valve Policies.

21. On July 13, 2020, Debtor renewed its demand for defense and indemnity from IHIC under the CGL section of the Valve Policies. The next day, Debtor's own CGL insurer

(United Fire Lloyd's) demanded that IHIC share in the cost of Debtor's defense of the Underlying Lawsuits.

22. On August 12, 2020, IHIC reiterated that no coverage is available to Debtor under the CGL section of the Valve Policies.

23. At no point has Debtor asserted that the PL section of the Valve Policies is implicated by the Explosion and Underlying Lawsuits. Debtor instead has only sought coverage under the CGL section of the Valve Policies. Thus, the only section of the Valve Policies that is relevant to this matter is the CGL coverage part.

### *The Underwriting History of the Valve Policies*

24. The relevant underwriting history of the Valve Policies begins with the policy year preceding the one in effect at the time of the Explosion.

25. Prior to November 30, 2018, Valve purchased CGL insurance from Gemini Insurance Company (at least at the primary level). For reasons unbeknownst to IHIC, however, Valve elected not to renew the Gemini primary policy which expired on November 30, 2018. Instead, Valve marketed its liability insurance program to others, including AXA XL, IHIC's parent company. AXA XL writes insurance through IHIC and various other admitted insurance companies.

26. Valve marketed its 2018 liability insurance program to AXA XL through its insurance broker (Al Thurmond Agency), which in turn worked through an intermediate wholesale insurance broker (CRC Insurance Services).

27. In October 2018, Valve (through its broker) obtained Quotes for a $1 million primary policy and a $10 million excess policy from an AXA XL Underwriter (Brian Quinn). The premiums associated with those Quotes were $40,600 (Primary) and $29,000 (Excess).

28. In late October 2018, however, at the request of Valve and/or Debtor (a request communicated to AXA XL through Thurmond and CRC),[1] Mr. Quinn agreed to make the following changes to his Quotes:

> "**Add - Limitation of Coverage to Designated Professional Services Endorsement EGEO 400 0417**
>
> *Limited to valve repair and engineering for a third party for a fee* — Mark I know this does not encompass the reporting, so please let me know how you would like this to read and we will have the carrier amend per your instructions.
>
> **Add - Schedule of Named Insureds ABAP 301 1007**
> *Watson Grinding & Manufacturing, Inc.*
>
> **Add - Policy Changes ABAP 403 1111**
> *-Amendment - Definition of "your product". Section V. 21.A. includes (3) the design of "your product*
> *-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL*
>
> Note with the addition of the Professional coverage the premium has changed as follows:
>
> **Catlin:**
> $43,600 Premium
> $500 Broker Fee
> $2,205 SL Tax/Fee
> **$46,305 Total**
>
> Catlin:
> $32,000 Premium
> $500 Broker Fee
> $1,625 SL Tax/Fee
> **$34,125 Total**"[2]

29. As evidenced by this communication, AXA XL increased the premiums associated with Valve's 2018-19 primary and excess liability policies by $3,000 apiece ($6,000 total), in

---

[1] In addition to their common ownership, Valve and Debtor both used Thurmond to place their respective insurance needs.
[2] Emphasis in original.

consideration for these three (3) "Adds" to its original Quotes, all of which were made at the instigation of Valve and/or Debtor.

30. Over the course of several days between November 29, 2018 and December 5, 2018, Valve and/or Debtor (through Thurmond and CRC) negotiated the wording of the first "Add" with AXA XL. The first "Add," as noted above, designated the limited scope of the PL coverage Debtor sought from AXA XL under Valve's 2018-19 liability insurance policies.

31. After these negotiations were concluded, AXA XL sent drafts of the 2018-19 policies IHIC would issue to Valve to CRC for review and approval. Once approved by CRC, AXA XL issued primary and excess liability policies to Valve for the period November 30, 2018 to November 30, 2019 (the "2018-19 Valve Policies").

32. Consistent with the foregoing, the primary liability policy issued by IHIC to Valve for the period November 30, 2018-19 included the three (3) "Adds" requested (and approved) by Valve and/or Debtor, to wit:

- Limitation of Coverage to Designated Professional Services Endorsement

    *Limited to valve repair and/or modification, engineering for a third party for a fee; and custom metal product coating reports and/or recommendations for a third party fee.*

- Schedule of Named Insureds (ABAP 301 1007)

    *Watson Grinding and Manufacturing, Inc.*

- Policy Changes (ABAP 403 1111)

    *-Amendment - Definition of "your product". Section V. 21.A. includes (3) the design of "your product*

    *-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL[3]*

\* \* \*

---

[3] Emphasis added.

33. Consistent with AXA XL's revised Quotes for these three (3) "Adds" requested by Valve and/or Debtor, the premiums reflected in the 2018-19 Valve Policies were as follows:

- Primary Policy $43,600 (plus fees and taxes)
- Excess Liability Policy $32,000 (plus fees and taxes)

34. Throughout the process of negotiating and delivering the 2018-19 Valve Policies, it was understood and agreed by all counsel that Debtor was being added as a named insured to the 2018-19 Valve Policies, but <u>only</u> for the limited grant of PL coverage that had been sought and designated by Valve and/or Debtor. Consider, for example, the following communications contemporaneous with the placement of the 2018-19 Valve Policies.

\* \* \*

2. Would this wording be sufficient for designated professional services on Watson Valve policy? **Endorsement would include Watson Grinding for professional liability only on the Watson Valve policy.[4]** The premium to make these changes would be $3000 plus tax on the GL and $3000 plus tax on the 10M excess policy. Total of 11M in coverage.

"Limited to valve repair, engineering for a third party for a fee and custom metal product coating reports."

**LIMITS OF LIABILITY**

| | |
|---|---|
| General Aggregate Limit: | $ 2,000,000 |
| Products Completed Operations Aggregate: | $ 2,000,000 |
| Personal and Advertising Injury: | $ 1,000,000 |
| Each Occurrence Limit: | $ 1,000,000 |
| Fire Damage: | $ 100,000 |
| Medical Payments: | $ 5,000 |
| Professional Liability: | 1,000,000 |

**ATTACHMENT POINT OPTIONS (Deductible):**

| | |
|---|---|
| Per Occurrence GL: | $ 5,000 |
| Per Claim E&O: | $ 10,000 |

**Add - Limitation of Coverage to Designated Professional Services Endorsement EGEO 400 0417**

---

4    Emphasis added.

> **Add - Schedule of Named Insureds ABAP 301 1007**
> *Watson Grinding & Manufacturing, Inc.*
>
> **Add - Policy Changes ABAP 403 1111**
> *-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL"* [5]

\* \* \*

> "Did you all decide if you wanted to add item #2 [above] to the Watson Valve GL policy? I believe this handles what **was requested by Bob at our meeting last week**.

\* \* \*

> "Watson **Valve** is the named insured on the GL policy **but we added** Watson **Grinding as named insured as respects to professional only and excluded from Watson Valve's GL**."[6]

35. In connection with the placement of the 2018-19 Valve Policies, Valve and/or Debtor also asked AXA XL to consider adding "site specific" Pollution Coverage relative to eight (8) of Debtor's locations and Valve's (1) location. The AXA XL Underwriter objected to this request, however, commenting as follows:

> "**We only added the Watson Grinding & MFG. entity for the PL** so we cannot add the list of addresses. **That entity is excluded from the other lines of businesses…**"[7]

36. In sum, Valve and/or Debtor requested that Debtor be added to the 2018-19 Valve Policies as a Named Insured, but only with respect to the limited and designated PL Coverage; Valve and/or Debtor (through their common broker) tweaked the language of one of the Endorsements added to the 2018-19 primary policy issued by IHIC to Valve in order to effect this goal of Valve and/or Debtor; and AXA XL agreed to augment the 2018-19 Valve Policies, in the

---

5  Highlighting in original.
6  Emphasis added.
7  Emphasis added.

manner requested and approved by Valve and/or Debtor, in exchange for a modest premium increase.

37. There is no doubt, as set forth in the communications outlined above, that (1) Valve, Debtor, Thurmond, CRC and IHIC all understood the limited extent to which Debtor was added to the 2018-19 Valve Policies; and (2) the 2018-19 Valve Policies were issued with the "Added" Forms and Endorsements approved by Valve and/or Debtor in order to achieve the limited goal of adding Debtor to the 2018-19 Valve Policies for designated PL Coverage only.

38. At the end of the November 30, 2018-19 policy period, Valve chose to renew the 2018-19 Valve Policies for the period November 30, 2019-20.

39. Once again acting through its insurance broker (Thurmond), Valve submitted an Accord Commercial Insurance Application ("Valve's Application") to AXA XL in connection with its planned renewal of the 2018-19 Valve Policies for the period November 30, 2019 to November 30, 2020. Valve's Application, signed by John Watson and Mark Thurmond, states the following with respect to the "Other Conditions, Restrictions and Endorsements" sought by Valve and/or Debtor from IHIC at renewal.

> "Professional liability coverage $1M w retro date 11/30/18, pollution exclusion – limited exception for a short-term pollution event (EGGL 612 0717, amend definition of 'your products, section v.21 a. includes (3) design of "your product **Watson Grinding & Mfg Inc is limited to professional liability only and excluded from the GL,** CG2010, CG2037, CG2404, products pollution liability ENDT EGGL 401 0417, primary and non-contributory, 30 DNOC"[8]

40. Consistent with Valve's Application, the AXA XL Underwriter (B. Quinn) provided Quotes to CRC (K. Kovalcik) for the Valve Policies that were being purchased by Valve for the period November 30, 2019 to November 30, 2020. Like the expiring Valve primary policy, these Quotes included the following Forms and Endorsements:

---

8 Emphasis added.

Schedule of Named Insureds EGMP 437 0118

*Watson Grinding & Mfg, Inc.*

Limitation of Coverage to Designated Professional Services Endorsement

*Limited to valve repair and/or modification, engineering for a third party for a fee; and custom metal product coating reports and/or recommendations for a third party fee.*

Policy Changes ABAP 403 1111

*-Amendment – Definition of "your product."  Section V.21.A. includes (3) the design of "your product*

*-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL*[9]

41. The premium quoted by AXA XL for the Valve Primary Policy was $57,525 (not including applicable surplus lines taxes) and the premium quoted for the follow form Valve Excess Policy was $42,875 (not including applicable surplus lines taxes).

42. On November 19, 2019, CRC (K. Kovalcik) gave AXA XL the order "to bind" the Valve Policies based on these Quotes.  The same day, AXA XL (K. Connor) sent CRC (Kovalcik) Binders for the Valve Policies, with effect from November 30, 2019.

43. Consistent with the expiring 2018-19 Valve primary policy, Valve's Application, and the aforementioned Quotes for the Valve Policies, the following Forms and Endorsements were included in the Binder for the Valve Primary Policy:

Schedule of Named Insureds EGMP 437 0118

*Watson Grinding & Mfg, Inc.*

Limitation of Coverage to Designated Professional Services Endorsement

*Limited to valve repair and/or modification, engineering for a third party for a fee; and custom metal product coating reports and/or recommendations for a third party fee.*

Policy Changes ABAP 403 1111

---

[9] Emphasis in original.

11

> *-Amendment – Definition of "your product." Section V.21.A. includes (3) the design of "your product*
>
> *-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL*[10]

44. The premium set forth in the Binders for the Valve Policies, consistent with the AXA XL Quotes for the coverage sought by Valve (and/or Debtor) at renewal for the period November 30, 2019 to November 30, 2020, were $57,525 and $42,875 for the Valve Primary Policy and Valve Excess Policy, respectively (not including applicable surplus lines taxes).

45. On December 13, 2019, AXA XL sent a final version of the Valve Primary Policy to CRC for review. When no changes to that document were requested by CRC, AXA XL proceeded to issue the Valve Primary Policy which, consistent with the expired 2018-19 Valve primary policy, Valve's Application and the 2019-20 Quotes and Binders, included the following:

> Schedule of Named Insureds EGMP 437 0118
>
> > *Watson Grinding & Mfg, Inc.*
>
> Limitation of Coverage to Designated Professional Services Endorsement
>
> > *Limited to valve repair and/or modification, engineering for a third party for a fee; and custom metal product coating reports and/or recommendations for a third party fee.*
>
> Policy Changes ABAP 403 1111
>
> > *-Amendment – Definition of "your product." Section V.21.A. includes (3) the design of "your product*
> >
> > *-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL*[11]

46. In short, the Valve Policies were "straight renewals" of the expiring 2018-19 Valve Policies. And, as evidenced by Valve's Application, both Valve and Debtor (and their broker) knew full well that Debtor was included on the Valve Policies <u>only</u> for the limited grant of PL

---

[10] Emphasis in original.
[11] Emphasis added.

Coverage originally purchased by Valve and/or Debtor in connection with the expiring 2018-19 Valve Policies.

### *The Relevant Policy Language*

47.   A Schedule of Named Insureds Endorsement to the Valve Primary Policy states as follows:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
CONTRACTORS POLLUTION LIABILITY COVERAGE FORM
PROFESSIONAL LIABILITY COVERAGE FORM
SITE POLLUTION LIABILITY COVERAGE FORM

**SCHEDULE OF NAMED INSUREDS**

Watson Grinding & Manufacturing, Inc.

All other terms and conditions of this policy remain unchanged.

48.   Consistent with the underwriting history chronicled above, however, the Valve Primary Policy also includes a Policy Changes Endorsement which states that:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

The following item(s):

| ☐ | Insured Name | ☐ | Insured Mailing Address |
|---|---|---|---|
| ☐ | Policy Number | ☐ | Insured Legal Status/Business of Insured |
| ☐ | Effective/Expiration Date/Retroactive Date | ☐ | Premium Determination |
| ☐ | Payment Plan | ☐ | Self-Insured Retention or Deductible |
| ☐ | Additional Interested Parties | ☐ | Classification/Class Codes |
| ☐ | Limits/Exposure | ☐ | Underlying Insurance |

13

| ☐ Covered Property/Location Description | ☐ Added/Deleted Endorsement(s) or Exclusion(s) |
|---|---|
| ☐ Rates/Scheduled Rating | ☐ Mooring Location/Navigation |

-Amendment - Definition of "your product". Section V. 21.A. includes (3) the design of "your product
-Watson Grinding & MFG, Inc. is limited to Professional Liability only and excluded from the GL

The above amendments result in a change in the premium as follows:

| ☒ No Change | ☐ To Be Adjusted At Audit | Additional Premium 0.00 | Returned Premium 0.00 | Surcharge\Taxes 0.00 |
|---|---|---|---|---|

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective: __11/30/2019__  Policy No.: __US00087635LI19A__  Endorsement No. __000__

Insured: __Watson Valve Services Inc.__   Premium: __0.00__

Insurance Company: __Indian Harbor Insurance Company__

49.     Both the Schedule of Named Insureds Endorsement and the Policy Changes Endorsement were included in the 2018-19 Valve primary policy and, consistent with Valve's Application and the 2019-20 Quotes and Binders, were simply carried over to the Valve Primary Policy.

50.     The Valve Excess Policy, as noted above, "follows form" to the Valve Primary Policy.  Hence, the Debtor is only an insured for the purposes of the PL Coverage provided by the

14

Valve Excess Policy and Debtor is not an insured for purposes of the CGL Coverage provided by the Valve Excess Policy.

### COUNT I – DECLARATORY JUDGMENT

51. IHIC adopts and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

52. There is an actual, present, and existing controversy between IHIC and Debtor regarding the existence of coverage under the Valve Policies in connection with the claims presented in the Underlying Lawsuits.

53. Based upon any facts that are pleaded and those that can be adduced or determined in the Underlying Lawsuits, the only potentially responsive coverage under the Valve Policies is the CGL section thereof, a point which is uncontested by Debtor.

54. Pursuant to the Policy Changes Endorsement to the Valve Primary Policy, the Valve Policies only provide PL Coverage to Debtor and do not provide CGL Coverage to Debtor.

55. Since Debtor is not an insured under the CGL Coverage of the Valve Policies, the Valve Policies do not provide coverage to Debtor for claims asserted against Debtor in the Underlying Lawsuits. IHIC therefore has no duty to defend or indemnify the Debtor against the claims asserted against Debtor in the Underlying Lawsuits.

56. While the plain terms of the Valve Policies make clear that no coverage is provided to Debtor under the CGL section of the Valve Policies, this conclusion is buttressed by the underwriting history of the Valve Policies (recounted above), which shows the clear intent of all parties that Debtor was to be added to the Valve Policies as a named insured only in respect of the limited PL Coverage provided by the Valve Policies.

### COUNT II – REFORMATION

57. IHIC adopts and incorporates by reference the allegations set forth in the preceding

15

paragraphs as though completely and fully set forth herein.

58. Pleading in the alternative, and only to the extent necessary, and subject to and without waiving any claims, causes of action or theories of liability, in the event the Court determines that the Valve Policies, as written, do not limit the Debtor's status as an insured thereunder to only the PL Coverage provided thereby, IHIC requests that the Court reform the Valve Policies to reflect the parties' antecedent agreement to that effect. The basis for such reformation is as follows:

    a. There was an original agreement between the parties that Debtor would be included as an insured under the Valve Policies only for the PL coverage provided thereby, as recounted above; and

    b. To the extent this original agreement was not effectively reduced to writing in the Valve Policies, there was a mutual mistake in reducing that original agreement to writing.

## **PRAYER**

WHEREFORE, IHIC respectfully prays:

    a. That Debtor be cited to answer and appear;

    b. Pursuant to Count I, a declaration that Debtor is not an insured under the CGL section of the Valve Policies and that, as a result, IHIC has no duty to defend Debtor in respect of the Underlying Lawsuits;

    c. Pursuant to Count I, a declaration that Debtor is not an insured under the CGL section of the Valve Policies and that, as a result, IHIC has no duty to indemnify Debtor in respect of the Underlying Lawsuits;

d.     In the alternative only, pursuant to Count II, a judgment reforming the Valve Policies to reflect that Debtor is not an insured under the CGL section of the Valve Policies;

e.     In the alternative only, upon judgment reforming the Valve Policies Pursuant to Count II, a declaration that Debtor is not an insured under the CGL section of the Valve Policies and that, as a result, IHIC has no duty to defend Debtor in the Underlying Lawsuits;

f.     In the alternative only, upon judgment reforming the Valve Policies pursuant to Count II,, a declaration that Debtor is not an insured under the CGL section of the Valve Policies and that, as a result, IHIC has no duty to indemnify Debtor in respect of the Underlying Lawsuits; and

g.     That this Court grant such further and different relief as may be appropriate to accomplish justice and equity among the parties.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Rick Shelby*
        Patrick "Rick" Shelby
        Louisiana Bar No. 31963
        S.D. Tex. Bankr. Court No. 2886131
        365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130
        Telephone: 504-566-1311
        Telecopier: 504-568-9230
        Email: rick.shelby@phelps.com

**ATTORNEY FOR INDIAN HARBOR INSURANCE COMPANY**

17

**Of Counsel:**
Stephen Hall
State Bar No. 24054013
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Telecopier: 504-568-9230
Email: stephen.hall@phelps.com

Sara Nau
State Bar No. 24083551
500 Dallas Street, Suite 1300
Houston, TX 77002
Telephone: 713-877-5503
Telecopier: 713-626-1388
Email: sara.nau@phelps.com